Mark **STREITFELD**, Defendant
below, Appellant,

v.

**STATE** of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 13, 1976.

Decided Jan. 21, 1977.

Reargument Denied Feb. 14, 1977.

Arlen B. Mekler, Mekler & Maurer, Wilmington, for defendant, appellant.

Charles M. Oberly, III, Deputy Atty. Gen., Wilmington, for plaintiff, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice.

This is an appeal from a sentence by the Superior Court after a jury had found defendant guilty of "knowingly or recklessly" selling obscene material in violation of 11 Del.C. § 1361(1).[1] Defendant contends

1. 11 Del.C. § 1361 provides:
  "A person is guilty of obscenity when he knowingly or recklessly:
  (1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide, any obscene picture, writing, record or other representation or embodiment of the obscene; or
  (2) Presents or directs an obscene play, dance or performance, or participates in

that the Trial Court erroneously instructed the jury on the meaning of the word, "prurient", and that he was prejudiced by a coercive supplementary jury instruction. We discuss these contentions *seriatim*.

I

The first issue for consideration concerns the instruction on the meaning of "prurient." The Trial Judge directed the jury, as follows:

"I turn now to the statute which has already been distributed to you and which has been discussed at length throughout the trial, that is the statute that contains the definition of obscene. This definition, as was mentioned at various times through the trial, comes from a case or perhaps several cases of the United States Supreme Court, and represents their language as to what materials are to be regarded as obscene. It reads as follows:

Material is obscene if, one, the average person applying contemporary community standards would find the material, taken as a whole, appeals to the prurient interest.

Now, that word gives some trouble. Prurient interest is given various definitions in various dictionaries, as has been mentioned, and I have consulted these dictionaries and I fell [sic] that a synonym for this word is, that would be most applicable in this case and most useful to

you in attempting to apply your—whatever understanding you already have of this word, would be lewd. This is not to say that the other definitions are incorrect, but simply that one of the synonyms listed in some of the dictionaries is the word lewd. I think you will find it the most useful, but not necessarily to the exclusion of other understandings you may have of the word."

The Court then discussed other provisions of the Statute.

After deliberating for a time, the jury requested further instruction on the definition of "lewd." The Court then gave the following explanation:

"Members of the jury, I have your note that says, 'May we please have the Court's definition of the word lewd?'

Of course, the word lewd is not in the statute, and I merely used that as a synonym for prurient, which is in the statute, however. Therefore, your primary thrust of your inquiry should be the correct application of the statutory language. However, no matter which word is being used, some of the same concepts are present.

I will give you some of the synonyms contained in the unabridged dictionary for lewd. One of the synonyms is lustful and another is lascivious.

I also will remind you that the Supreme Court informs you that, in at-

---

that portion thereof which makes it obscene; or
(3) Publishes, exhibits or otherwise makes available any obscene material; or
(4) Possesses any obscene material for purposes of sale or other commercial dissemination."
"Obscene" is defined in § 1864, as follows:
"Material is obscene if:
(1) The average person applying contemporary community standards would find the material, taken as a whole, appeals to the prurient interests; and
(2) The material depicts or describes:
a. Patently offensive representations or descriptions of ultimate sexual acts,

normal or perverted, actual or simulated; or
b. Patently offensive representations or descriptions of masturbation, excretory functions, and/or lewd exhibitions of the genitals; and
(3) The work taken as a whole lacks serious literary, artistic, political or scientific value."
Defendant concedes that this incorporates the test formulated by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

tempting to define prurient, the Supreme Court has sometimes referred to the phrase shameful or morbid, so I give you these additional words for you to apply in your consideration of the application of the statutory language."

Defendant argues that the principal instruction was erroneous since it did not mirror the dictionary definition of "prurient", and that the explanatory instruction compounded the error by taking the jury a step beyond the actual legal standard. We find neither argument persuasive.

In *Roth v. United States*, 354 U.S. 476, 487, n. 20, 77 S.Ct. 1304, 1310, n. 20, 1 L. Ed.2d 1498 (1957), the landmark decision in the law of obscenity, the United States Supreme Court said the following as to the meaning of "prurient":

"—material having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2d ed., 1949) defines *prurient*, [Court's emphasis] in pertinent part, as follows:

'* * * Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd * * *.'

*Pruriency* [Court's emphasis] is defined, in pertinent part, as follows:

'* * * Quality of being prurient; lascivious desire or thought. * * *'

We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.-10(2) (Tent.Draft No. 6, 1957), viz.:

'* * * A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. * * *' "

For other definitions of prurient, see generally, E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions*, § 41.03 (1970) where the following definition, in part, of obscene is offered:

" 'Obscene' means something which deals with sex in a manner such that the predominant appeal is to prurient interest; . . .

An appeal to prurient interest is an appeal to a morbid interest in sex, as distinguished from a candid interest in sex."

■ Here, the Trial Judge gave the jurors five synonyms to assist them in applying the obscenity statute. Basically, and following *Roth*, he defined obscenity in terms of its appeal to "prurient" interest; thereafter to assist the jury in its deliberations he used the five synonyms for that word: "lewd," "lustful," "lascivious," "shameful" and "morbid." While some of these terms may not be, in the technical sense, part of a dictionary definition of "prurient," they did convey to the jurors a clearer explanation of the legal meaning of the standard. Furthermore, we fail to see how their use can constitute prejudicial error when each term has been cited with approval by the Supreme Court of the United States in the context of an obscenity prosecution. *Roth v. United States, supra*. For these reasons, we conclude that the Court did not erroneously instruct the jury on the meaning of "prurient."

## II

We turn now to defendant's argument that he was prejudiced by the Trial Court's supplementary instruction to the jury.

After deliberating for roughly three hours the jury informed the Court that it was deadlocked. The Court then advised the jurors that it could not excuse them after such a short period of deliberation and requested that they give the case further consideration.

The Court's supplementary instruction—a so-called "Allen charge"—complied in all respects with that approved by this Court in *Brown v. State*, Del.Supr., 369 A.2d 682 (1976) except that the Judge failed to admonish each juror not to surrender a personal conviction merely for the sake of reaching a verdict.[2]

■ We have no intention of modifying that which was said in *Brown* about the "danger" of an Allen charge and the care with which it must be used to avoid judicial coercion on a jury. But counsel has a duty to promptly object to any departure from the *Brown* standard and thus to give the Trial Court an opportunity to make appropriate modifications in its instruction. See Superior Court Criminal Rule 30(a). Failure to make a timely objection may result in waiver of the right to complain. In other words, every departure from the *Brown* standard does not necessarily amount to reversible error which this Court will correct, absent objection below. And that is this case.

■ Defendant made no objection to the form in which the supplementary charge was given and he now contends that omission of the admonition not to surrender a personal conviction was plain and reversible error. We disagree. Considering all of the circumstances, including the time of day when the instruction was given, the words used, the length of the deliberations both before and after the instruction, and the complexity of the case, we conclude that defendant was not prejudiced by the supplementary instruction. There was no suggestion therein that either side had to compromise a conviction to reach a verdict, nor was there any intimation that the jury would be held until a verdict was reached. We conclude that the instruction was not coercive as a matter of law.

\* \* \* \* \* \*

Affirmed.

2. The Court's instruction and a following colloquy were as follows: "The case which you have been trying is, of course, one in which, perhaps, a great deal of debate and thought may be necessary in arriving at a verdict, because it took parts of three days to try and has exhibits running into hundreds of pages, and I cannot simply excuse you as a jury that's hopelessly hung after you have had the case for only about three hours.

The matter is one of importance and must be resolved eventually. If a mistrial is declared in this case, the State would have the right to demand a new trial before another jury, and there's no reason to believe that additional evidence or more evidence could be presented that would be helpful to another jury than has already been presented to this jury or that another jury would be drawn from a more capable and discerning group of persons, because all concerned in the trial have great confidence in you as jurors.

I must ask you to, both ·those of you who are in the majority and those of you who are in the minority in whatever debate you have had, to carefully re-examine your positions and to debate this matter further among yourselves.

I simply cannot excuse you after this short a time of debate, and I must ask you .to consider the case further.
Yes?
THE FOREMAN: May I ask you a question?
THE COURT: Yes.
THE FOREMAN: I think it's useless. Before we left I polled everybody about three, four—once, twice, three, four times, and the same people say they're not going to change their decision. I tried to change their decision with—
THE COURT: All right. It is the custom of this Court to ask for further debate. It—
THE FOREMAN: That's all right, sir.
THE COURT: It might turn out to be useless. I hope it won't, but many times I've been assured ,that it's useless and then a verdict has been arrived at, so we must ask you to put more effort into it than you have done so far.
THE FOREMAN: I'd be glad to, Your Honor.
THE COURT: All right, the jury is requested to go back to the Jury Room."