**Solomon COLLINS, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

**No. 385, 2011.**

Supreme Court of Delaware.

Submitted: Sept. 19, 2012.

Decided: Nov. 15, 2012.

---

Bernard J. O'Donnell, Esquire, of the Office of the Public Defender, Wilmington, Delaware for Appellant.

Paul R. Wallace, Esquire (argued), Danielle J. Brennan, Esquire, of the Department of Justice, Wilmington, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendant–Below/Appellant Solomon Collins appeals his convictions by a jury of Murder First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and three counts of Reckless Endangering First Degree. Collins was charged with the shooting death of Tommear Tinnin.

At trial, the State offered into evidence two out-of-court statements under 11 *Del. C.* § 3507 that identified Collins as the shooter of Tinnin. The declarants—Violet Gibson and Shakira Romeo—denied making the statements during their in-court testimony. The statements were admitted into evidence based upon the testimony of Detective Patrick Conner, the officer who interviewed Gibson and Romeo.

After eleven hours of deliberation, the jury reported to the trial judge that they were deadlocked. The trial judge gave an *Allen* charge and instructed the jury to deliberate further. Two hours later, the jury returned the guilty verdicts.

Collins raises three claims on appeal. He argues that there was an insufficient foundation to admit into evidence the out-of-court statement of Gibson, that there was an insufficient foundation to admit into evidence the out-of-court statement of Romeo, and that the trial judge erred in administering an *Allen* charge, which, as administered, was coercive.

Gibson and Romeo were classic turncoat witnesses. We conclude that the testimony at trial presented a sufficient foundation for the admission of their out-of-court statements under § 3507. The record shows that their out-of-court statements were given voluntarily, they were each subject to cross examination at trial, and their in-court testimony touched on both the events perceived and the content of their prior statements.

We also conclude that there was no abuse of discretion by the trial judge in giving an *Allen* charge. The jury was considering a complex case based largely on circumstantial evidence. The circumstances surrounding the inquiry into whether the jury was deadlocked gave the trial judge reason to believe that further deliberations would be helpful. The trial judge did not commit reversible error in his wording of the *Allen* charge, and he sufficiently admonished the jury that individual jurors should not surrender their personal convictions simply for the sake of unanimity. Accordingly, we affirm.

### *Facts and Procedural History*

On October 8, 2009, at around 3:30 p.m., Tinnin was shot to death while sitting in the back seat of a parked car on the corner of 23rd and Washington Streets in Wilmington. Tinnin, who was in the car with his two cousins, Tacarea Redden and Korin Redding, and Kanaiah, a 3-year-old relative, was shot to death by a tall, African American man wearing a brown "Roca Wear" sweatshirt with white lettering wielding a 9 millimeter, semi-automatic handgun.

The assailant fled the scene after the shooting. As he was fleeing, the assailant passed Violet Gibson and Shakira Romeo, who were, independent of one another, outside of the same apartment building at the south corner of the intersection across the street from the shooting.

Another witness, located one block away from the shooting, saw two men rush into a Nissan Maxima and quickly drive away. This witness, who was aware of the shooting and found the men's quick exit suspicious, called the police to report the activity. The police recovered the Maxima and found a brown sweatshirt with white "Roca Wear" lettering. Lab technicians later found Collins's DNA on the sweatshirt, as well as gunshot residue.

Violet Gibson met with Detective Patrick Conner of the Wilmington Police Department, and spoke with Det. Conner on the condition that she not be asked to testify at trial. Det. Conner assured Gibson that she would not be required to testify. Det. Conner then presented Gibson with a photo array, from which Gibson identified Collins as the shooter. Gibson's statements were recorded on audio tape.

Shakira Romeo met with Det. Conner on October 12 and also identified Collins as the shooter from a photo array.

At trial, Ms. Gibson testified she was on the street at the time of the shooting but did not see the shooting and could not identify the shooter. Gibson confirmed that she had spoken with Det. Conner, but claimed she may not have been truthful in her statements to him.

Similarly, Ms. Romeo testified that she was present when the shooting occurred and heard the gunshots, but she could not positively identify Collins as the shooter. Romeo testified that she spoke to a Detective about the shooting, but did not remember what she said. Lastly, she testified that everyone in the photo array looked familiar.

Gibson and Romeo's out-of-court statements were admitted into evidence during the testimony of Det. Conner, over defense objection.

After an eight day trial the case was submitted to the jury. After eleven hours of deliberation, the jury foreman sent the second of two notes [1] to the trial judge. The second note read, "The jury believes

---

1. The first note, which requested a magnifying glass and a transcript of a witness state- ment, is not relevant to this appeal.

that further discussions will not change the present vote of a hung jury."

The trial judge asked the foreman if he believed "further deliberations would help in this matter at all?" The trial transcript indicates only that the foreman answered, "No." However, the trial judge, defense counsel, and prosecutor all commented on the record that the foreman's response was a very "interesting" no. The prosecuting attorney clarified for the record that the "foreman's answer was kind of a long drawn out no." The trial judge explained: "That answer threw out some questions in my mind, so because of that I'm going to read the *Allen* charge. I don't think it will hurt in this case."

Collins' counsel objected generally to the giving of an *Allen* charge and made three requests to change the Court's proposed language. Two of those changes the trial judge made. The jury was then brought back into the courtroom, and trial judge instructed the jury as follows:

> Every case is important to the parties affected. This trial has been time consuming to both parties. If you should fail to agree on a verdict, the verdict is left open and undecided. Like all cases, it must be disposed of sometime.
>
> . . .
>
> There are matters which, along with other and perhaps more obvious ones, remind us of how important and desirable it is for you to unanimously agree upon a verdict but only if you can do so without violence to your individual judgment and conscience.
>
> You should not surrender your conscientious convictions. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without doing so to individual judgment. [*sic* ]
>
> . . .
>
> If a much greater number of you are for one side, each dissenting juror ought

to consider whether his or her position is a reasonable one, since it makes no effective impression on the minds of so many equally honest, intelligent, fellow jurors, who bear the same responsibility, serve under the same sanction of the same—excuse me, serve under the sanction of the same oath and have heard the same evidence with, we may assume, the same attention and an equal desire to arrive at the truth.

> In a like manner, the jurors who constitute a greater number should consider the reasons of those who take a different position to see whether there may be persuasive merit in that position. You are not partisans, you are judges, judges of the facts.
>
> . . .
>
> In the performance of this high duty, you are at liberty to disregard any comments of both the Court and counsel, including, of course, the remarks I'm now making.
>
> Remember at all times no juror should yield his or her conscientious belief as to the weight and meaning of the evidence. Remember, also, that after full deliberation and consideration of all the evidence it is your duty to agree upon the verdict if you can do so without violating your individual judgment and conscience.

The *Allen* charge was read at 10:58 a.m. At 1:04 p.m. that same day, the jury returned a unanimous verdict of guilty on all charges. Collins was sentenced to life imprisonment for Murder First Degree and level V time for the remaining counts. This appeal followed.

### Analysis

#### There Was a Proper Foundation to Admit Each of the Out–of–Court Statements Under § 3507

This Court reviews a trial judge's

evidentiary rulings for abuse of discretion.[2] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice to produce injustice."[3] If this Court determines that the trial judge abused his or her discretion, it then determines whether the error rises to the level of significant prejudice sufficient to deny the defendant a fair trial.[4]

Section 3507 of the Delaware Criminal Code states, in relevant part:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not....[5]

The draftsmen of § 3507 expressly contemplated a circumstance where a witness voluntarily gives a prior statement but later denies the substance of that statement at trial.[6] In *Woodlin v. State*, we reiterated the foundational requirements for the admission of a § 3507 statement:

The basic procedure for admitting a statement under section 3507 was first announced ... in *Keys v. State* [337

A.2d 18 (Del.1975) ]. In [*Keys* ], we held: "In order to offer the out-of-court statement of a witness, the Statute requires [that] the direct examination of the declarant ... [touch on] both the events perceived or heard and the out-of-court statement itself." Three weeks later, we supplemented *Keys* in *Hatcher v. State* [337 A.2d 30 (Del.1975) ], where we addressed another foundational requirement for the admission of a witness' statement pursuant to section 3507–voluntariness.... In *Ray v. State* [587 A.2d 439 (Del.1991) ], we also explained (and cited Johnson) in holding in order to conform to the Sixth Amendment's guarantee of an accused's right to confront witnesses against him, the declarant must also be subject to cross-examination on the content of the statement as well as its truthfulness.[7]

 A trial judge decides whether a statement was voluntarily made under a "preponderance of the evidence" standard.[8] To find a statement voluntary, the declarant's free will must be not "so overborne that the statements produced were not the product of [a] rational intellect and free will."[9]

### The Statement of Violet Gibson

 Collins claims that Gibson's out-of-court statement was wrongfully admitted into evidence, because (1) Gibson did

---

**2.** *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008) (citing *Pope v. State*, 632 A.2d 73, 78–79 (Del.1993)).

**3.** *Culp v. State*, 766 A.2d 486, 489 (Del.2001) (internal citations omitted).

**4.** *Seward v. State*, 723 A.2d 365, 372 (Del. 1999).

**5.** 11 *Del. C.* § 3507.

**6.** *Johnson v. State*, 338 A.2d 124, 127 (Del. 1975).

**7.** *Turner v. State*, 5 A.3d 612, 616 (Del.2010) (quoting *Woodlin v. State*, 3 A.3d 1084, 1087 (Del.2010) (internal citations omitted)).

**8.** *Woodlin v. State*, 3 A.3d at 1087 (citing *Hatcher v. State*, 337 A.2d 30, 32 (Del.1975)).

**9.** *Roth v. State*, 788 A.2d 101, 107–08 (Del. 2001) (quoting *Martin v. State*, 433 A.2d 1025, 1032 (Del.1981)).

not speak with Detectives voluntarily because Det. Conner promised Gibson she would not be called upon to testify in court, and (2) Gibson's in-court testimony did not touch on the content of her out-of-court statement.

Gibson's interview with Det. Conner did not occur at the police station and she was not in handcuffs. She was not prevented from terminating the interview, and at no point did Det. Conner tell Gibson she had no choice other than to speak to him. Det. Conner's promise to Gibson—that she would not be called to testify at trial—did not render her statement involuntary.

Collins argues that Gibson's in-court testimony only "touched on" her out-of-court statement insofar as she denied making it. Gibson testified that she was present on the street at the day and time the shooting occurred. She testified that she spoke with Det. Conner about the shooting, that she was "not sure" about any questions that Det. Conner asked her and was she not sure of her responses.

■ As this Court has explained, a purpose of § 3507 is to allow the admission into evidence the out-of-court statements of turncoat witnesses.[10] Gibson's testimony described her position in relation to where the shooting occurred, her reaction to the shooting, and her interaction with Det. Conner. It was for the jury to assess the credibility of Gibson and of Det. Conner, who testified about Gibson's prior statements. Gibson's statements were properly admitted into evidence under § 3507.

### The Statement of Shakira Romeo

■ Romeo admitted on the witness stand that she spoke to the Detectives voluntarily; therefore, Collins' only claim on appeal is that Romeo's in-court testimony did not "touch on" her out-of-court statement.

Romeo testified she was present while the shooting occurred and that she heard the gunshots. She remembered speaking to a Detective, looking at a photo array, and recognizing several faces from the photo array, but she did not remember picking Collins out of the photo array. She testified she would have told the Officer the truth.

Collins' entire argument rests on the claim that because Romeo denied making the identification of Collins, her testimony did not "touch on" her prior statement. This argument is without merit. A turncoat witness denying a prior statement is a classic example of § 3507's applicability.[11] While on the witness stand, Romeo described particularities of the shooting, her interactions with the police officers, and the photo array she was shown. Romeo's testimony, although inconsistent with her prior statements, sufficiently did "touch on" the content of her prior statements. The trial judge did not err in admitting Romeo's out-of-court statement into evidence under § 3507.

### The Trial Judge's Allen Charge

■ Generally, this court reviews a trial judge's *Allen* charge under an abuse of discretion standard.[12] "[S]upplementary instructions which encourage the jury to reach a verdict, sometimes referred to

10. *Blake v. State*, 3 A.3d 1077, 1082 (Del. 2010) (citing *Johnson v. State*, 338 A.2d 124 (Del.1975)).

11. *Blake v. State*, 3 A.3d at 1082 (citing *Johnson v. State*, 338 A.2d 124 (Del.1975)).

12. *Papantinas v. State*, 820 A.2d 372, 2003 WL 1857548, at *3 (Del.2003); *Coverdale v. State*, 637 A.2d 826, 1993 WL 557929, at *1 (Del.1993).

as an 'Allen charge' or 'dynamite charge' are generally proper." [13] The potential coercive effect of an *Allen* charge "can be eliminated by having the charge include an admonition that each individual juror not surrender his or her honest convictions and not return any verdict contrary to the dictates of personal conscience." [14]

 Where a defendant does not fairly raise a question for consideration by the trial judge, and raises the question for the first time on appeal, this Court reviews the claim for plain error.[15] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." [16] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." [17]

Collins' defense counsel lodged a general objection to giving an *Allen* charge at all. Counsel also made three requests to change the language of the proposed charge, two of which were granted. On appeal, Collins raises the objections rejected by the trial court, but he also raises a specific objection to the wording of the instruction that was not raised before the trial court. Specifically, Collins now claims the trial court should not have distinguished between "majority" and "minority" jurors in the charge.

Collins' objections below were made in two stages. His general objection addressed the giving of an *Allen* charge. Defense counsel stated:

> I automatically object ... I always object to *Allen* charges, so I do in this case, and especially for the record, it's not a terribly complicated case and there's only one issue, identity.

Once the trial judge determined that an *Allen* charge would be given, defense counsel then continued to object to three portions of the charge. He did not object to the use of the majority/minority distinctions, however. We review for plain error any portion of the charge to which no specific objection was made.

 In determining whether an *Allen* charge was coercive, we consider:

> (1) the timing of the instruction, (2) the words used in the instruction, (3) the length of the deliberations both before and after the instruction, and (4) the complexity of the case.[18]

As to timing, the charge was given after eleven hours of deliberation. The jury had returned for a new day of deliberation and the *Allen* charge was given at 10:58 a.m. This timing is comparable to that in *Davis*

---

**13.** *Jenkins v. State*, 401 A.2d 83, 87 (Del. 1979).

**14.** *Brown v. State*, 369 A.2d 682, 684 (Del. 1976).

**15.** *See* Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Turner v. State*, 5 A.3d 612, 615 (Del.2010) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986)).

**16.** *Turner*, 5 A.3d at 615 (internal citations omitted).

**17.** *Id.* (internal citations omitted).

**18.** *Desmond v. State*, 654 A.2d 821, 826 (Del. 1994) (citing *Streitfeld v. State*, 369 A.2d 674, 677 (Del.1977)) ("*Streitfeld* factors"). *See also Boatson v. State*, 457 A.2d 738, 743 (Del. 1983); *Papantinas v. State*, 820 A.2d 372, 2003 WL 1857548, *2 (Del.2003).

*v. State.* There, we found no coercion when, among other circumstances, the charge had been given early in the day.[19]

■ Collins argues that the wording of the instruction concerning jurors in "the majority" or "the minority" was coercive to the minority jurors. In his instructions, the trial judge asked both the majority and minority jurors to re-examine their views. He used different phrasing in addressing the majority jurors than he used in addressing the minority jurors. Although the use of a majority/minority distinction was disapproved in *United States v. Eastern Medical Billing, Inc.,*[20] the Third Circuit decided that case not on constitutional grounds, but on the basis of its supervisory power over the federal district courts.[21] Of significance to this appeal is that the federal circuits are split as to whether the majority/minority distinction is coercive.

An *Allen* charge that instructs the majority and the minority to re-examine their views has been approved in the First,[22] Fourth,[23] Sixth[24] and Eighth[25] Circuits. The *Allen* charges approved by these circuits differed in their wording, but each drew a distinction between majority and minority jurors and in some fashion asked both groups to reconsider their views. Importantly, each of those circuits found repeated warnings—as was done here—

that jurors not give up their individual convictions, diminished the risk that the majority/minority distinction might be coercive. The Seventh[26] and the District of Columbia[27] Circuits agree with the Third Circuit that any majority/minority distinction is coercive.

Although these approaches suggest that any instruction using the majority/minority distinction is best avoided, the divergent federal precedent persuades us that it was not plain error for the trial judge to make the distinction in his *Allen* charge in this case. The error in wording—if there was one—was neither plain nor obvious.

■ Collins next argues the *Allen* charge was coercive because the trial judge did not "instruct the jurors 'not to render any verdict contrary to the dictates of personal conscience,'" as this Court required in *Brown v. State.*[28] This objection was not raised at trial. We therefore consider only whether the trial judge committed plain error. The *Brown* decision noted that trial judge should include such an admonition in its *Allen* charge,[29] but did not require that precise wording to be used. Indeed, Collins' reading of *Brown* runs counter to *Streitfeld v. State,* where this Court found no plain error when that admonition was not given.[30]

---

19. *Davis v. State,* 725 A.2d 441, 1999 WL 86055, at *3 (Del.1999).

20. *United States v. Eastern Medical Billing,* 230 F.3d 600 (3d Cir.2000).

21. *Id.* at 608.

22. *United States v. Hernandez–Albino,* 177 F.3d 33, 38 (1st Cir.1999).

23. *U.S. v. Cropp,* 127 F.3d 354, 359–60 (4th Cir.1997).

24. *Williams v. Parke,* 741 F.2d 847, 850–51 (6th Cir.1984).

25. *U.S. v. Smith,* 635 F.2d 716, 721 (8th Cir. 1980).

26. *U.S. v. Silvern,* 484 F.2d 879, 882–83 (7th Cir.1973).

27. *U.S. v. Thomas,* 449 F.2d 1177, 1187 (D.C.Cir.1971).

28. *Brown,* 369 A.2d at 684.

29. *Id.*

30. *Streitfeld v. State,* 369 A.2d 674, 677 (Del. 1977).

Here, the trial judge expressly admonished the jurors that they should not do "violence to [their] individual judgment and conscience" and they "should not surrender [their] conscientious convictions." This type of warning was given, in various forms, four times during the trial judge's *Allen* charge. Sufficient admonition was given to the jurors to maintain their personal convictions, which made this charge consistent with our *Brown* and *Streitfeld* decisions.

 Collins next argues that the trial judge's statement that the jury "is at liberty to disregard the comments of both the Court and counsel" was improper. This portion of the charge was not objected to at trial. Therefore, we consider only whether the trial judge committed plain error in giving the instruction. In *Maxion v. State*, this Court found in isolation this language "may seem inappropriate," but when coupled with repeated reminders to the jury to not "surrender their convictions unless they believed them to be erroneous," created no threat of coercion.[31]

Similarly, in *Smith v. State*, this Court held that a similar charge which stated the jury could "disregard the comments of both the Court and counsel" was permissible.[32] In *Smith*, we found that the trial judge was merely reminding the jury that it was "part of its duty to assess the credibility of all witnesses" and in doing so it could "disregard comments of counsel (or even the Court) that, in the process of weighing the evidence, it found were not credible."[33]

 Finally, Collins argues that the trial court erred in highlighting how many Court resources were devoted to presenting this trial, and that the case "must be disposed of sometime." This portion of the instruction was objected to at trial, and will be reviewed for abuse of discretion. This Court found in *Papantinas v. State* that language referencing the case "must be disposed of sometime" to be permissible, so long as it is accompanied by repeated reminders that the individual jurors should not "surrender his or her individual judgment or honest convictions."[34]

 The length of the jury deliberations in this case does not demonstrate coercion. The jury deliberated for approximately two hours more after the *Allen* charge before returning a verdict. The case involved a violent murder, in addition to numerous and serious other charges, where much of the evidence was circumstantial. The jury was required to weigh the credibility of witnesses who contradicted their own prior statements. After considering the four *Streitfeld* factors, we find no abuse of discretion by the trial judge in giving the *Allen* charge or in overruling the objection made at trial to its wording. Finally, we find no plain error.

### Conclusion

The judgment of the Superior Court is **AFFIRMED.**

---

**31.** *Maxion v. State*, 612 A.2d 158, 1992 WL 183093, at *1 (Del.1992).

**32.** *Smith v. State*, 839 A.2d 666, 2003 WL 22931398, at *2–3 (Del.2003).

**33.** *Id.* at *3.

**34.** *Papantinas v. State*, 820 A.2d 372, 2003 WL 1857548, at *1–2 (Del.2003).