IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SOLOMON COLLINS, | § | |
| | § | No. 88, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 0910019961 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 27, 2016
Decided: May 2, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **ORDER**

This 2nd day of May, 2016, it appears to the Court that:

(1)    In July of 2011, the Superior Court tried Solomon Collins for the murder of Tommear Tinnin.  Before trial, two eyewitnesses identified Collins from a photo lineup.  Detective Patrick Conner of the Wilmington Police Department had interviewed the witnesses.  Detective Conner made an audio recording of eyewitness Violet Gibson's statement.  For the other witness, Shakira Romeo, he made notes on a notepad and directly on the photo array.  At trial, Romeo's and Gibson's testimony contradicted their previous statements.  The State relied on 11 *Del. C.* § 3507 to introduce their previous statements through Detective Conner.  A

Superior Court jury convicted Collins of murder and related crimes. We affirmed his convictions on direct appeal.

(2) In 2013, Collins filed a motion for postconviction relief alleging ineffective assistance of trial and appellate counsel for failing to object to and appeal Detective Conner's testimony admitted under § 3507. The Superior Court denied the motion because Detective Conner's testimony reflecting Gibson's and Romeo's photo identification of Collins was not improper narrative interpretation or embellishment, and Collins could not demonstrate prejudice.

(3) During Collins' second appeal to this Court, the State learned that there was a discrepancy between the photo array the State admitted at trial that Romeo had used to identify Collins, and the copy that the State had sent to Collins' attorney during discovery. Detective Conner had written the word "shooter" on the photo array admitted at trial, but Collins' copy did not have the word "shooter" on it. At the parties' joint request, we remanded the case to the Superior Court for a hearing to explore the nature of the discrepancy between the photos.

(4) The Superior Court held a two day hearing on remand and determined, in a thorough opinion, that Detective Conner added the word "shooter" to the photo array shown to Romeo after the discovery copy was sent to Collins. The court also determined that the addition was not made in bad faith or in response to the § 3507 issue that arose at trial. Further, the Superior Court held

2

that Collins' trial counsel was not ineffective because Collins could not show how the discrepancy had caused any prejudice. This appeal followed.

(5) After reviewing the record and the arguments on appeal, we find that the Superior Court correctly concluded in its opinion on remand that Collins cannot demonstrate prejudice from the trial exhibit dispute as it pertained to Romeo's § 3507 statement, and also that trial counsel's failure to discover the discrepancy did not violate *Strickland*.[1] The Superior Court also correctly concluded in its first opinion that Gibson's § 3507 statement was not an improper narrative and therefore counsel was not ineffective for failing to object to it.[2] We therefore affirm.

(6) On October 8, 2009, Tommear Tinnin was shot to death while sitting in the back seat of a parked car with his two cousins and another young relative. The assailant fled the scene and passed two bystanders, Violet Gibson and Shakira Romeo. Gibson and Romeo met with Detective Conner after the incident. They both identified Solomon Collins as the shooter from a photo array. Detective Conner made an audio recording of his interview with Gibson. He did not record his interview with Romeo. Instead, he took notes on his notepad and directly on the photo array he presented to Romeo during the interview.

---

[1] *State v. Collins*, Cr. ID No. 0910019961 (Del. Super. Dec. 22, 2015).
[2] *State v. Collins*, 2015 WL 412924, at *1 (Del. Super. Jan. 30, 2015).

(7)     At trial, the testimony of Gibson and Romeo was inconsistent with their prior statements to Detective Conner.  The State used 11 *Del. C.* § 3507 to introduce their out of court statements through Detective Conner during his testimony.  The State also played the audio recording of Gibson identifying Collins as the shooter, and introduced into evidence the photo array Detective Conner had written on reflecting Romeo's identification.  During his testimony, Detective Conner clarified that Gibson had identified Collins as the shooter because the recording identified the suspects by number rather than name.  Further, he testified that Romeo identified Collins as the shooter and that he wrote notes regarding her statements onto the photo array during the interview.

(8)     After an eight day trial, a jury found Collins guilty of Murder First Degree, three counts of Reckless Endangering First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited.  On July 15, 2011, the Superior Court sentenced Collins to life imprisonment for the murder conviction, and additional time for the remaining counts.

(9)     We affirmed Collins' conviction on direct appeal in 2012.[3]  In 2013, Collins filed a motion for postconviction relief alleging ineffective assistance of counsel.  The Superior Court denied the motion and held that counsel was not

---

[3] *Collins v. State*, 56 A.3d 1012 (Del. 2012).

ineffective for failing to object, because admission of the § 3507 statements of both Romeo and Gibson had been proper.[4] Collins appealed the Superior Court's rulings on the admission of each witness' § 3507 statement. During the appeal, the State learned that there was a discrepancy between the photo array that Romeo had used to identify Collins, which the State admitted at trial ("State's Exhibit 84"), and the copy that the State had sent to Collins' attorney during discovery. The word "shooter" was written on State's Exhibit 84, but Collins' copy did not have the word "shooter" on it. At the parties' joint request, we remanded the case to the Superior Court for a hearing to explore the nature of the discrepancy between the photos and retained jurisdiction. We declined to address Collins' second argument at that time, which pertains to Gibson's § 3507 statement, at the time we issued the remand order.

(10) On remand, the Superior Court held a hearing to address the discrepancy. The State offered the testimony of Detective Conner, the trial prosecutors, and the trial defense attorney. The Superior Court found that (1) Detective Conner added the word "shooter" to the original photo array shown to Romeo after the discovery copy was made for Collins; (2) the alteration made to the original photo was not done in bad faith or in response to the § 3507 issue that arose at trial; (3) Romeo identified Collins as the shooter during her interview with

---

[4] *Collins*, 2015 WL 412924.

Detective Conner; and (4) exclusive of the photo array, the trial prosecutors and defense counsel were aware during the pendency of the case that Romeo had identified Collins as the shooter and expected her to testify consistent with that identification at trial.[5]

(11) Based on these findings, the Superior Court held that Collins' ineffective assistance of counsel claim failed. The court found that the issue of when Detective Conner wrote the word "shooter" on the photo array was immaterial because Romeo's statement still would have been introduced as a § 3507 statement at trial. Therefore, even if trial counsel had noticed the discrepancy and raised the issue, the outcome would have been the same. Further, the Superior Court held that Collins could not show he was prejudiced by the discrepancy because Romeo's identification of Collins as the shooter was never withheld from trial counsel. Therefore, trial counsel was aware of Romeo's pretrial identification of Collins as the shooter and could have expected testimony consistent with that identification at trial.

(12) This Court reviews the Superior Court's decision to deny post conviction relief for abuse of discretion.[6] "Similarly, our review on a ruling on the admissibility of a § 3507 statement is for abuse of discretion. Thus the trial court's judgment is reversible only if we find that the decision to admit the § 3507

---

[5] App. to Opening Br. at 180-81.
[6] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

6

evidence was clearly erroneous."[7] We review questions of law *de novo*.[8] We review the Superior Court's factual findings and credibility determinations deferentially, and will reverse only if the findings are clearly erroneous.[9]

(13) Collins argues that his trial counsel was ineffective by failing to object to the admission of Gibson's § 3507 statement as amounting to improper embellishment. Second, Collins argues that his appellate counsel was ineffective for failing to raise the issue on direct appeal of whether Romeo's § 3507 statement was an inadmissible interpretive narrative.[10] Finally, Collins argues that his trial counsel was ineffective for failing to identify the discrepancy between the photo array the State provided during discovery and the one admitted at trial.

(14) Collins argues that his trial counsel was ineffective for failing to object to the admission of Detective Conner's "embellished," narrative testimony on the substance of Gibson's identification. Collins made this argument in his Opening Brief in this appeal, but the Court declined to address it in the remand order, as the resolution of the photographic array discrepancy issue pertaining to Romeo could have potentially made it moot.[11] To prevail on this claim, Collins must be able to satisfy the two-prong test from *Strickland v. Washington*, showing both that his trial counsel's failure to object fell below an objective standard of

---

[7] *Flonnory v. State*, 893 A.2d 507, 515 (Del. 2006).
[8] *Id.*
[9] *Woody v. State*, 765 A.2d 1257, 1261 (Del. 2001).
[10] Opening Supp. Mem. at 3.
[11] *Collins v. State*, No. 88, 2015 (Del. Oct. 23, 2015).

7

reasonableness and that but for that deficient performance, there was a reasonable probability that the outcome of the proceedings would have been different; in other words, that there was prejudice to his defense.[12] To eliminate "the distorting effects of hindsight," there is a strong presumption that trial counsel's representation was professionally reasonable.[13] And "there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."[14]

(15) Essentially, because it was not possible from the audio recording to ascertain who Gibson was identifying as the shooter without additional information (she could be heard identifying the person in photograph number three), Detective Conner, who showed Gibson the array, testified that the person she identified was Collins. In another part of the recording, Gibson contradicted her earlier identification by stating that Collins had "nothing to do with it." Collins argues that because Gibson's statement was recorded, only the recording should have been admitted—not Detective Conner's testimony on the substance of the recording. He finds this particularly pressing because Detective Conner's testimony "contradicted" the recording, and emphasized inculpatory portions (the

---

[12] 466 U.S. 668, 687 (1984).
[13] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).
[14] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013).

identification) while ignoring the exculpatory statement about Collins having "nothing to do with it."

(16) The fact that Gibson's statement needed some explanation because it was an audio recording of an exchange in which a witness identified a person in a numbered photograph *by number* does not transform Detective Conner's testimony into an "interpretive narrative." Gibson had identified Collins' picture as the "shooter" or "the boy with the shooter," and thus it was neither narrative interpretation nor embellishment for Detective Conner to clarify who Gibson identified in the array.

(17) In addition, the jury heard the complete recording, including the exculpatory statement about Collins having "nothing to do with it." Detective Conner's testimony served merely to make understandable an identification that would otherwise be meaningless to anyone listening only to the audio recording, rather than to put emphasis on any particularly damning portions of Gibson's statement. Collins cannot demonstrate that Detective Conner's statement was an improper interpretive narrative, and therefore cannot show that there was a reasonable probability that an objection would have resulted in a different outcome.

(18) Collins also argues that the word "shooter" was an interpretive narrative because it was not written contemporaneously with Romeo's statement

9

and therefore was "not memorialized by a verbatim written, audio or video record, or contemporaneous shorthand notes."[15]  In his opening brief, Collins argued that his appellate counsel was ineffective for failing to appeal the admission of Romeo's § 3507 statement because it was an interpretive narrative.  Collins makes the related argument following remand that the Superior Court erred by finding that regardless of when the word "shooter" was written, it was admissible as a § 3507 statement at trial.

(19)   Under 11 *Del. C.* § 3507:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.
(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not.  The rule shall likewise apply with or without a showing of surprise by the introducing party.

The offering party must lay a proper foundation as to both the events perceived or heard as well as the statement itself.[16]  Further, to comport with Collins' Sixth Amendment right to confront witnesses against him, the declarant must be subject to cross examination on the content of the statement as well as its truthfulness.[17]

(20)   This Court has emphasized:

---

[15] Opening Supp. Mem. at 3.
[16] *Keys v. State*, 337 A.2d 18 (Del. 1975).
[17] *Ray v. State*, 587 A.2d 439, 443 (Del. 1991) (citing *Johnson v. State*, 338 A.2d 124, 126-27 (Del. 1975)).

> It is the statement of the declarant that is being admitted, not the interpretive narrative of the person who heard the statement. Care should be taken to guarantee that [§ 3507] is not abused by permitting a witness, such as a police officer, to embellish the prior statement by his own interpretation, even if the embellishment is made in the utmost good faith.[18]

We have stated that the preferred way to present § 3507 evidence "is by a written statement from the declarant or a redacted recorded statement of only the declarant's words."[19]  But this Court has never required that the State present a verbatim recording of the declarant's statement.  Rather, we have held that in the absence of a verbatim record, the admission of a witness' statement as recorded in a police officer's shorthand notes is permissible where the officer writes down the "words said by the person that he was interviewing, which gave him certain factual information that he thought was important to be recorded."[20]

(21)   In its first postconviction opinion, the Superior Court determined that Collins failed to satisfy either prong of *Strickland* with his § 3507 argument.  The court held that counsel on the direct appeal was not deficient for failing to raise the argument there, and that there was no prejudice because "Romeo's identification of [Collins] as the shooter is expressly recorded" in his notes.[21]  The later discovery of the discrepancy between the two photographs does not affect the Superior Court's conclusion.

---

[18] *Hassan-el v. State*, 911 A.2d 385, 395-96 (Del. 2006).
[19] *Id*. at 398.
[20] *Flonnory*, 893 A.2d at 522-23.
[21] *Collins*, 2015 WL 412924, at *3-4.

11

(22) The Superior Court found after the remand hearing that Romeo identified Collins as the shooter during her interview, but for some reason Detective Conner failed to write it on the photo array at that time. There is ample evidence in the record to support the court's determination. Detective Conner testified consistently at trial and at the hearing as to the substance of Romeo's statements during his interview with her. Further, trial counsel was aware that Romeo had identified Collins as the shooter before trial and expected her to testify to that fact at trial. Finally, Detective Conner's police report and affidavit of probable cause, both authored well in advance of trial, reflect Romeo's pretrial identification of Collins as the shooter. The Superior Court's factual determination is therefore supported by the record and is not "clearly erroneous." We defer to that factual finding.[22]

(23) The fact that Detective Conner did not write the word "shooter" on the photo array contemporaneously with Romeo's statement, though imprudent, does not transform his trial testimony into an interpretive narrative. The law requires that the detective accurately represent the witness's actual statement and not give a personal interpretation of the statement. In this case, Romeo identified Collins as "the shooter" during the interview. Therefore, the Superior Court properly determined that the statement was not an interpretive narrative.

---

[22] *See Woody*, 765 A.2d at 1261.

(24) To prevail on his ineffective assistance of appellate counsel claim for failure to raise the § 3507 issue on direct appeal, Collins would have to satisfy the deficient performance and prejudice prongs of *Strickland*.[23] Because Detective Conner's testimony was not an interpretive narrative, the Superior Court correctly found that Romeo's statement was admissible, and there was no reasonable possibility that appealing the issue would have been fruitful. Collins' argument thus fails under the second prong of *Strickland*.

(25) Finally, Collins argues that trial counsel was ineffective for failing to discover the discrepancy between State's Exhibit 84 and the discovery copy. He argues that the disclosure would have provided grounds to exclude the photo or impeach Detective Conner's testimony. Once again, under *Strickland*,[24] Collins must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) prejudice.[25]

(26) Collins cannot demonstrate prejudice from trial counsel's failure to recognize the discrepancy. State's Exhibit 84 was not the only time where Detective Conner recorded that Romeo had identified Collins as the shooter. Detective Conner's police report and affidavit of probable cause reflect Romeo's pretrial identification of Collins as the shooter. Furthermore, trial counsel was

---

[23] *Stone v. State*, 690 A.2d 924, 925 (Del. 1996) (citing *Strickland*, 466 U.S. at 694) (applying *Strickland* test to ineffective assistance of appellate counsel claim).

[24] 466 U.S. at 687; *see also Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[25] *Brooks*, 40 A.3d 346, 354 (Del. 2012).

aware that Romeo had identified Collins as the shooter before trial and expected her to testify to that fact at trial. The State also introduced evidence that gunshot residue and Collins' DNA were found on the sweatshirt that both witnesses saw him wearing.[26] Further, the State presented the recording of Gibson identifying Collins in the lineup. Therefore, it is not "reasonably likely the outcome would have been different" if trial counsel had identified the discrepancy.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[26] *Collins*, 56 A.3d at 1016.