IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,              )
                               )
                               )
              v.               )        I.D. No. 1408022157 A&B
                               )
                               )
DATWAN LUM,                    )
                               )
         Defendant.            )

## MEMORANDUM OPINION

Defendant Datwan Lum seeks a new trial after being found guilty at his second trial of charges of Carrying a Concealed Deadly Weapon ("CCDW") and Possession of a Weapon by a Person Prohibited ("Person Prohibited"). He argues the court erred when it did not grant a mistrial after the jury sent a note during its deliberations that one of the jurors was claiming a right to jury nullification. He also asserts the court erred when it gave an *Allen* charge after receiving a second note from the jury inquiring what would happen if the jury could not reach a verdict by the end of the day.

### Background

This matter arises from Defendant's second trial. Lum first stood trial in 2015 on the charges of Resisting Arrest as well as the CCDW charge. The court severed the Person Prohibited charge and planned to submit it to the same jury in a bifurcated trial after the jury returned a verdict on the other charges. The jury found Defendant guilty of Resisting Arrest but was unable to reach a

1

verdict on the CCDW charge. Because the jury could not reach a verdict on the CCDW charges, the court declared a mistrial on that charge and did not conduct the anticipated Person Prohibited phase of the bifurcated trial. It did, however, enter a finding of guilt on the Resisting Arrest charge.

Defendant's retrial on the CCDW and Person Prohibited charges began on May 10, 2016. Once again the court severed the Person Prohibited charge by bifurcating trial of that charge, so only the CCDW charge was before the jury during the first phase of the second trial.[1] The jury found Defendant guilty of CCDW, whereupon the Person Prohibited charge was presented to the jury at the second phase of the bifurcated trial. The jury also found Lum guilty of that charge. The issues here stem from two notes sent to the court by the jury during its deliberations on the CCDW charge. Those notes and the issues they raise are discussed below.

**The evidence**

The State's case against Defendant was a strong one. Two New Castle County Police Officers attempted to stop Defendant on Third Street in Wilmington adjacent to, and within sight of, the Wilmington Police Department's central headquarters.[2] Defendant, who was standing outside holding a child when the detectives approached in their unmarked Crown Victoria, apparently recognized the Crown Vic as a police vehicle and ran. One of the officers gave chase on foot and the other pursued in the car. The chase

---

[1] The jury was not told of the pendency of the Person Prohibited charge. It only learned of that charge after it found Lum guilty of CCDW.

[2] The legality of the stop is not an issue here.

2

was a short one; Defendant, who was never out of sight of the pursuing county officers, was quickly apprehended with the assistance of some Wilmington police officers who happened to be nearby.

During the chase the officers, who were about 20 feet away from Defendant at the time, saw a silver and brown object which appeared to be a gun, either fall or being thrown from the waistband of the Defendant's cargo pants. One officer saw bullets spill out of the weapon as this happened. Within seconds after Lum was apprehended one of the officers returned to the spot where the object fell or was tossed, and located a silver revolver with a brown handle. He also found bullets matching the caliber of the revolver. Police later tested the weapon for fingerprints and found none which were useable. They swabbed the gun to recover any DNA but did not send the swabs for DNA testing. Unlike the first trial, the State introduced testimony at the second trial that (1) useable fingerprints are not often found on handguns, (2) DNA swabs of handguns often do not yield useable DNA and (3) the laboratory cost of analyzing the swabs of this revolver for DNA was substantial.[3]

### The jury deliberations and the notes

The trial lasted two days, with the first consisting of the presentation of the evidence and the second consisting only of closing arguments and instructions. The jury began deliberations around 10:30 and three hours later sent a note to the court stating:

---

[3] The State did not introduce such evidence at the first trial, and Defendant's counsel argued to the jury that the absence of any fingerprint or DNA identification raised a reasonable doubt about his client's guilt. This argument was not available to Defendant in the second trial.

3

> The jury has not been able to reach a verdict because #12 has claimed the right to perform jury nullification in regards to the law in question. It is not a matter of needing more time to discuss evidence, and arguments for and against the use of nullification have all been exhausted.

The court read the note verbatim to the parties out of the presence of the jury, except (with the agreement of counsel) it did not identify juror "#12" when reading the note. Defendant requested a mistrial, which the State opposed.[4]

The court denied Lum's request and opted to reread to the jury a portion of its earlier instructions:

> I wanted to tell you that, when you took the oath as jurors, you obligated yourself to follow the law as I give it, not as you think it ought to be. The people that make the laws of this state are the General Assembly, the elected people, not judges and not juries. I'm going to reread to you one paragraph that I instructed you on earlier.
>
> Nor are you to be concerned with the wisdom of any legal rule that I give you. Regardless of any opinion that you may have about what the law ought to be, it would violate your sworn duty to base a verdict on any view of the law other than what I give you in these instructions. It would also violate your sworn duty as judges of the facts to base a verdict on anything but the evidence in the case.

The court did not give an *Allen* charge at this time.

Roughly 20 minutes later the jury sent a second note to the court:

> Juror in question is requesting specific information in regards to the procedures of the Court in the event that a verdict has not been arrived at by the end of the day.

---

[4] Tr. 45.

4

Upon receipt of the note, the court advised counsel it was considering reading an *Allen* charge to the jury. The State agreed, but the defendant objected and again requested a mistrial. The court recalled the jury and read to it the standard *Allen* charge, with one important omission—it did not read the following language which appears in the court's standard charge:

> If much the greater number of you are on one side, each dissenting juror ought to consider whether his or her position is a reasonable one.

The court explained it omitted this language because, under the circumstances (an apparent 11-1 split) the omitted language might be too coercive. The court also told counsel that Delaware Supreme Court dictum in *Collins v. State*[5] dissuaded it from reading the omitted language. In *Collins* the Supreme Court was confronted with whether the use of majority/minority language in an *Allen* charge constituted plain error. After reviewing the holdings of several federal courts of appeal the *Collins* Court concluded:

> An *Allen* charge that instructs the majority and the minority to re-examine their views has been approved in the First, Fourth, Sixth and Eighth Circuits. The *Allen* charges approved by these circuits differed in their wording, but each drew a distinction between majority and minority jurors and in some fashion asked both groups to reconsider their views. Importantly, each of those circuits found repeated warnings—as was done here—that jurors not give up their individual convictions, diminished the risk that the majority/minority distinction might be coercive. The Seventh and the District of Columbia Circuits agree with the Third Circuit that any majority/minority distinction is coercive.

---

[5] 56 A.3d 1012 (Del. 2012). This court did not mention *Collins* by name when it referred to the Supreme Court's opinion.

> Although these approaches suggest that any instruction using the majority/minority distinction is best avoided, the divergent federal precedent persuades us that it was not plain error for the trial judge to make the distinction in his *Allen* charge in this case. The error in wording—if there was one—was neither plain nor obvious.[6]

## The verdict

Minutes after hearing the *Allen* charge the jury announced it had a verdict; it found the defendant guilty of CCDW. The court thereupon told the jury that it still had work to do. The State's sole evidence in the second phase of the bifurcated trial was a stipulation that at the time of these events the defendant was a "person prohibited." Defendant presented no evidence, and after brief closing arguments the court read jury instructions (including a repetition of the charge on the Presumption of Innocence and Reasonable Doubt) to the jury on the person prohibited charge. The jury retired again to deliberate and quickly found Defendant guilty of the person prohibited charge.

## Analysis

Defendant makes two arguments why the court should have declared a mistrial. First he argues that juror twelve's assertion of a "right" of jury nullification automatically required a mistrial. Second he contends the court erred when it gave an *Allen* charge after the jury's second note.

---

[6]    *Id.* at 1021 (footnotes omitted).

**The "nullification note"**

Without meaningful citation[7] to any authority Defendant argues that once it received the nullification note "the only remedy was for the Court to declare a mistrial."[8] The court has had occasion in the past to opine on the consequences of counsel's failure to submit any authority in support of a written argument. In *Gonzalez v. Caraballo*[9] it wrote:

> In order to develop a legal argument effectively, the Opening Brief must marshall the relevant facts and establish reversible error by demonstrating why the action at trial was contrary to either controlling precedent or persuasive decisional authority from other jurisdictions. The failure to cite *any* authority in support of a legal argument constitutes a waiver of the issue on appeal. Accordingly, we hold that all of the legal issues raised by Flamer in this appeal have been waived.
> These principles apply with equal force to papers filed in this Court. Courts throughout the country hold that they are not obligated to do "counsel's work for him or her." The Court is not asking counsel to routinely submit arguments worthy of publication in a law review; indeed, in some instances (such as a party's failure to provide discovery) it is often unnecessary to cite any authorities. Nonetheless, in all but the simplest motions, counsel is required to develop a reasoned argument supported by pertinent authorities. Counsels' performance in this matter fell well short of that standard. Counsel are on notice that henceforth this Judge will summarily deny any motion filed by a represented party involving a question of law or the application of law to fact in which the party does not meet this standard.

---

[7] Lum cited only *Flonnory v. State,* 778 A.2d 1044 (Del. 2001), for the unremarkable proposition that he is entitled to a trial by impartial jurors. He did not cite a single authority which discusses jurors who claim the right to nullification.

[8] It should be kept in mind Defendant does not object to the language used by the court when it instructed the jury after the Nullification Note; instead he argues that no instruction should have been given at all and that the court should have declared a mistrial.

[9] 2008 WL 4902686 at *3 (Del. Super.)(footnotes omitted).

Lum's claims relating to the Nullification Note are therefore summarily denied. However, since juror assertions of the right to nullification are thankfully rare in this state, the court will briefly discuss the fruits of its and the State's research on the issue.

It goes without saying that neither the State nor the defendant has a right to proceed with a nullification juror on the jury.[10]  Jury nullification is the antithesis to a right to a fair trial by an impartial jury.  The Supreme Court of California put it well:

> Jury nullification is contrary to our ideal of equal justice for all and permits both the prosecution's case and the defendant's fate to depend upon the whims of a particular jury, rather than upon the equal application of settled rules of law. As one commentator has noted: "When jurors enter a verdict in contravention of what the law authorizes and requires, they subvert the rule of law and subject citizens—defendants, witnesses, victims, and everyone affected by criminal justice administration—to power based on the subjective predilections of twelve individuals. They affect the rule of men, not law." A nullifying jury is essentially a lawless jury.[11]

It does not follow, however, that a juror's expression of intent to nullify the law requires an automatic mistrial.  Rather there are intermediate steps which a trial judge should undertake before declaring a mistrial.  In a landmark case the United States Court of Appeals for the Second Circuit wrote "trial courts have the duty to forestall or prevent such conduct, whether by firm instruction or admonition or, where it does not interfere with guaranteed rights or the need

---

[10]  *Salcido v. Runnels*, 2007 WL 2900426 at n.1 (N.D. Cal.)("Juror nullification is not a right under the Constitution, laws or treaties of the United States.").
[11]  *People v. Williams*, 21 P.3d 1209, 1223 (Cal. 2001)(citations omitted).

to protect the secrecy of jury deliberations."[12] The first step in the effort to "forestall or prevent" jury nullification is reminding the jury of its obligation to follow the law. According to the Supreme Court of Washington:

> [T]he trial court has a duty to investigate if it comes to its attention during deliberations that a juror may be attempting nullification. * * * [A] study of the case law reveals that some general guidelines have emerged. First, if a juror or jurors accuse another juror of refusing to deliberate or attempting nullification, the trial court should first attempt to resolve the problem by reinstructing the jury.[13]

Here the court took this limited step when it reread to the jury the instruction on its obligation to follow the law. This court recognizes that the line between preventing jury nullification and intruding into the secrecy of the jury's deliberations is a fine one worthy of the Flying Wallendas. Fortunately the first step taken here—reminding the jury of its obligation to follow the law as given by the trial judge—cured the problem and remained far short of intruding into the secrecy of the jury's deliberations. There was therefore no reason to declare a mistrial as requested by Defendant.

### The *Allen* charge

Defendant contends the court abused its discretion when it gave an *Allen* charge after receiving the second note from the jury. Lum does not contend that the language of the *Allen* charge itself was coercive, instead he contends that the mere fact the court gave the charge could have coerced the jury.

---

12      *United States v. Thomas,* 116 F.3d 606, 616 (2nd Cir. 1997).
13      *State v. Elmore,* 123 P.3d 72, 80 (Wash. 2005)(*en banc*).

Lum does not contend that the language of the charge itself was coercive. Nonetheless, on at least four occasions in his briefs he asserts that he was not given an opportunity to object to that charge. Lum explicitly concedes that he "does not argue that this factor [the words used in the instruction] weighs in favor of a finding of coerciveness." It is therefore not entirely clear to the court why he asserts that he was not given an opportunity to object to the charge. In case it is missing something, the court will briefly address Lum's contention that he was not given an opportunity to object to the charge.

The court disagrees with Lum that he was not given an opportunity to object to the Allen charge. It is the responsibility of counsel to make an objection if he or she feels one is appropriate. "In our adversarial system, counsel has an obligation to object,"[14] and the court cannot solicit objections from counsel at every turn in the trial. Nothing in the record shows that the court said anything to prevent Lum's counsel from objecting or making a record. If counsel believed they were being rushed they had an obligation to speak up, allow the court to correct any mistake it made, and at the same time make a record of how they were prevented from making an objection.

The court now turns to Lum's contention that the *Allen* instruction, or the mere giving of that instruction, was coercive. Courts of this State look to four factors when determining whether an *Allen* charge is appropriate: (1) the timing of the instruction, (2) the words used in the instruction, (3) the length of the deliberations both before and after the instruction, and (4) the complexity

---

[14]   *Beeks v. State,* 2015 WL 7756858 at *3 (Del.).

10

of the case.[15]  Some of those factors weigh against finding the instruction was coercive:

- *The words used in the instruction.*   As mentioned above, Lum concedes in his brief the language of the instruction was not coercive. Nonetheless he also argues that "[e]ssentially, the jury received the message that it was not allowed to leave until it came to a unanimous verdict."  The jury received no such message.  On at least four occasions the court told the jurors that they should not surrender their views simply for the purpose of arriving at a verdict.

  o "how important and desirable it is for you to unanimously agree upon a verdict, but only if you can do so without violence to your individual judgment."[16]

  o "You should not surrender your conscientious convictions."[17]

  o "Each of you must decide the case for yourself."[18]

  o "Remember at all times, no juror should yield to his or her conscientious belief as to the weight and meaning of the evidence."[19]

---

[15]  *Collins v. State*, 56 A.3d 1012, 1020 (Del. 2012).
[16]  Tr. 57.
[17]  *Id.*
[18]  *Id.*
[19]  *Id.* at 58.

The notion that the jury somehow believed it was not allowed to leave until it arrived at a unanimous verdict is belied by the very last words of the instruction:

> I do not suggest that, in any way, you must remain together until a verdict is reached, nor do I suggest that you deliberate—excuse me—nor do I suggest that you must deliberate for any particular length of time before you are discharged.

- *The length of the jury's deliberations before the instruction.* The jury had deliberated a little more than three hours when the court gave the *Allen* charge. This was not an instance, therefore, where an exhausted jury was being compelled to deliberate further.

On the other side of the coin some of the factors weigh in favor of a finding the instruction was coercive:

- *The length of the jury's deliberations after the instruction.* Needless to say, when deciding whether to give an *Allen* charge a trial court has no way of knowing how long a jury will deliberate after the instruction. Thus this factor therefore does not play a role in that decision. It can serve, however, as an after-the-fact barometer of the coerciveness of the charge. In this case the fact that the jury deliberated for approximately five minutes after the charge was given weighs in favor of finding it was coercive.

12

- *The complexity of the case.* The relative complexity of a case does not budge the needle on the coerciveness meter. It does, however, play a role in the cost-benefit analysis courts engage in when deciding whether to give an *Allen* charge. This case was straightforward and short, involving comparatively short testimony from three police officers. The court fully understands that the time police officers spend testifying (or waiting to testify) in court takes time away from their primary duty—protecting the public. Even so, the simplicity of this case weighed against giving an *Allen* charge.

As in all matters involving judicial discretion, there is no algorithm for judges to use when deciding to give an *Allen* charge. Rather, a judge is required to weigh these factors as well as "the totality of circumstances" [20] when deciding whether an *Allen* charge is (or will be) coercive. A balancing of the factors discussed above does not tip the scale strongly one way or the other. There is, however, one of those amorphous "other circumstances" which when viewed in the "totality of circumstances" persuades the court that its *Allen* charge could have been coercive. Lum correctly makes the point that the *Allen* charge was not responsive to the jury's question. Recall that the second note read:

> Juror in question is requesting specific information in regards to the procedures of the Court in the event

---

[20] *See Desmond v. State*, 654 A.2d 821, 828 (Del. 1994) (finding that the totality of the circumstances leads the Court to conclude that the *Allen* charge was not coercive).

> that a verdict has not been arrived at by the end of the day.

The court finds that in light of this question the *Allen* instruction conveyed the impression that the court would declare a mistrial if the jury did not reach a verdict by the end of the day. As Defendant notes, during voir dire the jurors acknowledged they were able to stay for three days, which meant that they were all available to retire for the day and return for further deliberations the next day. With 20/20 hindsight the court now believes the jury could simply have been asking if additional deliberations could take place the following day which means one or more of them could have construed the *Allen* instruction as meaning "You cannot come back tomorrow. If you do not reach a verdict today there will be a mistrial." This tips the scale in favor of declaring a mistrial.

It is therefore **ORDERED** that:

1. Defendant's motion for a new trial is **GRANTED**

2. Defendant's convictions for CCDW and Person Prohibited are **VACATED.**

June 29, 2016
_____
John A. Parkins, Jr.
Superior Court Judge

oc:   Prothonotary

cc:   James K. McCloskey, Esquire, Tianna S. Bethune, Esquire, Department of Justice, Wilmington, Delaware
Colleen E. Durkin, Esquire, Matthew C. Buckworth, Esquire, Collins & Associates, Wilmington, Delaware